# UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| Gene Darrough, individually and on behalf of all others similarly situated,<br><br>Plaintiff<br><br>v.<br><br>SOC LLC, et al.,<br><br>Defendants | Case No. 2:20-cv-01951-CDS-BNW<br><br>**Order Granting in Part Defendants' Motion for Summary Judgment**<br><br>[ECF No. 40] |
| Nicholas DeFiore, individually and on behalf of all others similarly situated, et al.,<br><br>Plaintiffs<br><br>v.<br><br>SOC LLC, et al.,<br><br>Defendants | Case No. 2:20-cv-01981-CDS-DJA<br><br>**Order Granting in Part Defendants' Motion for Summary Judgment**<br><br>[ECF No. 48] |

This matter comes before the court on defendants SOC LLC ("SOC"), SOC-SMG, Inc. ("SOC-SMG"), and Day & Zimmermann, Inc.'s ("Day & Zimmermann") (collectively, "defendants") consolidated motion to dismiss. ECF No. 40 (Darrough); ECF No. 48 (DeFiore).[1] Plaintiffs, who were employed by defendants to provide war-zone security services to the Department of Defense (DOD) in Iraq, raise numerous claims against defendants, centered around allegations of false promises and representations regarding work conditions. Plaintiffs Gene Darrough and Nicholas DeFiore[2] oppose the consolidated motion to dismiss. ECF No. 42

---

[1] Because the consolidated motions filed in Darrough and DeFiore are identical, the court refers to the motion to dismiss filed in Darrough (ECF No. 40) throughout this order.

[2] As well as plaintiffs Arnold Alexander, Dustin Boyle, Allen Cain, Alfredo Luis Cruz, Babatunda Douglas, Todd Dupont, Christopher Fields, Robert Herring, Jaquelyn Joubert-Young, Abdelrahim Khamis, Richard Landry, Daniel Mercanton, Paul Mills, Jr., Jerome Mundy, George Munn, Rene Perez, Keith Quick, Neil Robinson, Joseph Scott, Christopher Warren, Curtis Watson, Shawn Whitehead, Houston Willams, Christopher Williams, Benton Williams Jr., David Wolderzak, Warren Woods, and Eduardo Zuniga.

(Darrough); ECF No. 50 (DeFiore).[3] For the reasons set forth herein, defendants' consolidated motion to dismiss is granted in part and denied in part.

## I.    Background

Plaintiff Gene Darrough filed his complaint against defendants and Does 1–20 in the Eighth Judicial District Court of Nevada in September 2020. Darrough Compl., ECF No. 1-2. Plaintiffs Nicholas DeFiore, along with twenty-eight other plaintiffs,[4] filed their complaint against defendants and Does 1–20 in the Eighth Judicial District Court of Nevada in October 2020. DeFiore Compl., ECF No. 1-2. The complaints are substantially similar.[5] *Compare* DeFiore Compl., ECF No. 1-2, *with* Darrough Compl., ECF No. 1-2.

Plaintiffs were employed as armed guards by SOC, providing security to DOD bases in Iraq. DeFiore Compl., ECF No. 1-2 at ¶ 1; *see also* Darrough Compl., ECF No. 1-2 at ¶ 1. SOC, which stands for "Securing Our Country," provides worldwide security services for individuals, domestic facilities, nuclear power plants, and military bases. DeFiore Compl., ECF No. 1-2 at ¶ 5; *see also* Darrough Compl., ECF No. 1-2 at ¶ 5. SOC is owned by SOC-SMG and Day & Zimmermann. DeFiore Compl., ECF No. 1-2 at ¶ 2; *see also* Darrough Compl., ECF No. 1-2 at ¶ 2.

Plaintiffs brought this action alleging that SOC recruited them under false promises "with respect to the schedule [they] would work." DeFiore Compl., ECF No. 1-2 at ¶ 1; *see also* Darrough Compl., ECF No. 1-2 at ¶ 1. Plaintiffs allege that the working conditions were "not

---

[3] Because the oppositions filed in filed in Darrough and DeFiore are identical, the court only refers to the opposition filed in Darrough (ECF No. 42) throughout this order.

[4] The other DeFiore plaintiffs are: Keith Quick, Neil Robinson, Christopher Williams, Shawn Whitehead, Paul Mills, Jr., Rene Perez, Robert Herring, Houston Williams, Allen Cain, Richard Landry, Warren Woods, Arnold Alexander, Daniel Mercanton, David Wolderzak, Jaquelyn Joubert-Young, Abdelrahim Khamis, Curtis Watson, Joseph Scott, Babatunda Douglas, Dustin Boyle, Alfredo Luis Cruz, George Munn, Todd Dupont, Jerome Mundy, Benton Williams Jr., Eduardo Zuniga, Christopher Warren, and Christopher Fields.

[5] All plaintiffs in the present actions were also members of the putative *Risinger* class action. *See Risinger v. SOC LLC*, No. 2:12-cv-00063-MMD-PAL (D. Nev.). The class consisted of 1,298 of defendants' employees who worked across 22 bases in Iraq. The class was certified on September 30, 2015, but ultimately, decertified on July 26, 2019, with reconsideration of that order denied on September 30, 2019. *Risinger*, ECF No. 374.

revealed" to them "until after they had agreed to overseas employment" and "had been physically transported to Iraq." DeFiore Compl., ECF No. 1-2 at ¶ 1; *see also* Darrough Compl., ECF No. 1-2 at ¶ 1. Once in Iraq, they were forced to "work in ultra-hazardous conditions in excess of 12 hours per day without meals or rest periods, seven days per week." DeFiore Compl., ECF No. 1-2 at ¶ 1; *see also* Darrough Compl., ECF No. 1-2 at ¶ 1. According to the complaints, this "directly violated not only the representations made by SOC to secure Plaintiffs' employment, but its [DOD] contract[.]" DeFiore Compl., ECF No. 1-2 at ¶ 1; *see also* Darrough Compl., ECF No. 1-2 at ¶ 1. That contract mandated that SOC would not require any guard to work longer than one 12-hour shift per 24-hour period, and not more than 72 hours per week (i.e., the "6/12 schedule"). DeFiore Compl., ECF No. 1-2 at ¶ 1; *see also* Darrough Compl., ECF No. 1-2 at ¶ 1. Plaintiffs allege that "SOC thus subjected Plaintiffs and SOC's clients, including the United States of America, to undue risk by jeopardizing the physical and psychological condition of Plaintiffs in the course of ultra-hazardous activities." DeFiore Compl., ECF No. 1-2 at ¶ 1; *see also* Darrough Compl., ECF No. 1-2 at ¶ 1.

The complaints assert eight claims for relief: (1) promissory fraud; (2) negligent misrepresentation; (3) unjust enrichment-fraud; (4) money had and received; (5) breach of contract; (6) breach of covenant of good faith and fair dealing; (7) quantum meruit; and (8) unjust enrichment-breach of contract. *See generally* DeFiore Compl., ECF No. 1-2; *see also* Darrough Compl., ECF No. 1-2. Defendants move to dismiss all eight claims. Specifically, they move to dismiss counts one through four and eight for failure to plead with specificity as required by Rule 9(b), and counts five through seven for failure to state a claim for relief. *See generally* ECF No. 40. Defendants also argue that plaintiffs' alter ego allegations are insufficient so they move to dismiss the 20 Doe defendants. *Id*.

## II.     Legal standard

The Federal Rules of Civil Procedure require a plaintiff to plead "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

Dismissal is appropriate under Fed. R. Civ. P. 12(b)(6) where a pleader fails to state a claim upon which relief can be granted. *Id.* (b)(6); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A pleading must give fair notice of a legally cognizable claim and the grounds on which it rests, and although a court must take all factual allegations as true, legal conclusions couched as factual allegations are insufficient. *Id.* at 555.

Accordingly, Fed. R. Civ. P. 12(b)(6) requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *id.* at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* This standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

If the court grants a motion to dismiss for failure to state a claim, leave to amend should be granted unless it is clear that the deficiencies of the complaint cannot be cured by amendment. *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992). Under Fed. R. Civ. P. 15(a), a court should "freely" give leave to amend "when justice so requires," and in the absence of a reason such as "undue delay, bad faith or dilatory motive of the part of the movant, repeated failure to cure deficiencies by amendment previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc." *Foman v. Davis*, 371 U.S. 178 (1962).

## III.    Discussion

### A.    Federal Rule of Civil Procedure 9(b) (counts one through four, and count eight)

Allegations based in fraud must be pled with particularity in accordance with Federal Rule of Civil Procedure 9(b). A plaintiff alleging fraud must "state with particularity the circumstances constituting fraud . . . , [although] [m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). The allegations of

fraud must be "specific enough to give defendants notice of the particular misconduct. . . so that they can defend against the charge and not just deny that they have done anything wrong. . . . Averments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003). This requires an account of the "time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations." *Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1066 (9th Cir. 2004) (citation omitted). The plaintiff must also explain what is false or misleading about the purportedly fraudulent statement, and why it is false. *In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541 (9th Cir. 1994). A claim that is "grounded in fraud" or "sounds in fraud" must satisfy Rule 9(b). *Vess*, 317 F.3d at 1106.

The complaints allege that defendants orchestrated a broad-based scheme that included false representations about employees' future salary and work conditions in Iraq. DeFiore Compl., ECF No. 1-2 at ¶¶ 41–49; *see also* Darrough Compl., ECF No. 1-2 at ¶¶ 13–24. The complaints also allege SOC knew these representations were false but made them as part of its recruitment push for security guards and intended to rescind these guarantees once the guards were deployed to Iraq. DeFiore Compl., ECF No. 1-2 at ¶ 52; *see also* Darrough Compl., ECF No. 1-2 at ¶ 54. As a result, plaintiffs raise a number of fraud claims: promissory fraud, negligent misrepresentation, tortious and contractual unjust enrichment,[6] and money had and received. *See generally* DeFiore Compl., ECF No. 1-2; *see also* Darrough Compl., ECF No. 1-2.

Defendants move to dismiss plaintiffs' fraud claims for failure to meet the heightened pleading standards of Federal Rule of Civil Procedure 9(b). ECF No. 40 at 8. Defendants argue that the fraud claims should be dismissed because they do not satisfy Rule 9(b)'s pleading

---

[6] Plaintiffs bring two claims for unjust enrichment: "unjust enrichment-promissory fraud" claim (count three), and "unjust enrichment-breach of contract" (count eight). Defendants argue that counts three and eight should be treated as a single quasi-contract theory of recovery because there is "no material difference between these two claims." ECF No. 40 n.3. Plaintiffs do not address this argument or demonstrate any meaningful difference between counts three and eight. *See* ECF No. 42 at 17–18. Thus, counts three and eight will be treated as one quasi-contract theory of recovery.

requirements. *Id.* at 16–20. Plaintiffs aver that their allegations are sufficiently pled under Rule 9(b) because the "allegations make clear that false promises [ ] made by Defendants [during] telephone calls and when they traveled to Nevada (the where) before their departure to Iraq on the dates alleged in paragraphs 6 through 34 as to each individual plaintiff (the when), that the false promises were also made both telephonically and in writing (the how), and that the misrepresentations related to Plaintiffs' salary, work schedule, vacation, and other working conditions (the what)." ECF No. 42 at 13.

While the complaints describe actions which very well may be fraudulent behavior, plaintiffs' allegations are general rather than specific. In *Cafasso v. Gen. Dynamics C4 Sys.*, the Ninth Circuit found that general allegations do not suffice to pass Rule 9(b) scrutiny. 637 F.3d 1047, 1055 (9th Cir. 2011). There, the Ninth Circuit rejected the plaintiff's allegation under Rule 9(b) because "[t]his type of allegation, which identifies a general sort of fraudulent conduct but specifies no particular circumstances of any discrete fraudulent statement, is precisely what Rule 9(b) aims to preclude." *Id.* at 1057. Likewise, here, as defendants argue, the complaints do not satisfy Rule 9(b) because they fail to specifically identify upon what misrepresentations plaintiffs allegedly *relied upon*. For example, the DeFiore plaintiffs allege that they were approached by SOC recruiters or answered a job posting on an online board which informed them about the employment opportunity. *See* DeFiore Compl., ECF No. 1-2 at ¶ 45; *see also* Darrough Compl., ECF No. 1-2 at ¶ 19. In DeFiore, it is unclear which of the 29 DeFiore plaintiffs were approached by SOC recruiters or which plaintiffs answered the job posting, or what was conveyed by either. To satisfy Rule 9(b), a complaint must be more specific. *See Sanford v. MemberWorks, Inc.*, 625 F.3d 550, 558 (9th Cir. 2010) (holding plaintiffs failed to satisfy Rule 9(b) because they "failed to allege which of them made any of the telephone calls" or the "mailings *they* received"); *Moore v. Kayport Package Express*, 885 F.2d 531, 540 (9th Cir. 1989) (holding that a complaint did not satisfy Rule 9(b) because it "d[id] not specify *which* plaintiff received *which* prospectus, or *which* plaintiff(s) made purchases through the stockbroker

defendants" (emphases added)); *see also Bisson v. Bank of Am., N.A.*, 919 F. Supp. 2d 1130, 1137–38 (W.D. Wash. 2013) (dismissing fraud claims on grounds that "Plaintiffs have failed to distinguish between the 55 plaintiffs in this action").

The complaints also allege that SOC, through group recruiting calls using a universal call script, made false promises regarding the 6/12 schedule.[7] DeFiore Compl., ECF No. 1-2 at ¶ 46; *see also* Darrough Compl., ECF No. 1-2 at ¶ 20. However, it is not clear whether any plaintiff participated in a group recruiting call or even heard the alleged universal call script. Plaintiffs argue that SOC recruiters in Nevada made false representations about the 6/12 schedule. ECF No. 42 at 14. However, Darrough alleges that "[u]pon arrival in Iraq, Plaintiff and other Class Members *were informed* of the 6/12 Schedule and the fact that they would not be expected to work more than six days per week at 12 hours per day." Darrough Compl., ECF No. 1-2 at ¶ 22 (emphasis added). So, contrary to plaintiffs' argument, it appears that at least some plaintiffs became informed of the 6/12 schedule while in Iraq and not prior to deployment.[8] This further demonstrates the lack of specificity set forth in the complaint. Because plaintiffs have not alleged fraud with the requisite level of particularity to satisfy Rule 9(b), counts one through four, and eight of the DeFiore and Darrough complaints are dismissed without prejudice.

**B.  Breach of contract (count five)**

A claim for breach of contract requires: (1) the existence of a valid contract; (2) a breach by the defendant; and (3) damage as a result of the breach. *Brown v. Kinross Gold U.S.A., Inc.*, 531 F. Supp. 2d 1234, 1240 (D. Nev. 2008) (citations and quotation marks omitted). In the complaints, plaintiffs allege that SOC breached the terms of its employment agreement with plaintiffs by "requir[ing] Plaintiffs to work more than 12 hours a day, and more than 72 hours a week" without rest periods or overtime compensation. DeFiore Compl., ECF No. 1-2 at ¶¶ 49, 76; *see also*

---

[7] The 6/12 schedule means a schedule of one 12-hour shift per 24-hour period, resulting in no more than 72 hours worked per week.

[8] While not considered in the court's decision here, the court notes that in the *Risinger* action, Darrough confirmed that he "first received information from SOC about how many hours a day [he was] permitted to work or how many days a week [he was] permitted to work when [he] arrived in Iraq." Excerpt from Darrough Dep. Tr., Defs.' Ex. D, ECF No. 41-4 at 4.

Darrough Compl., ECF No. 1-2 at ¶¶ 23, 79. Plaintiffs also allege that their employment agreements stated that they would "perform duties and responsibilities that are customary for the Employee's position" including working a 6/12 schedule. DeFiore Compl., ECF No. 1-2 at ¶ 75; *see also* Darrough Compl., ECF No. 1-2 at ¶ 40. The complaints further allege that "SOC was contractually obligated by its own contract with the United States Government to limit its guards to work no more than 12 hours in a day and 72 hours a week" and that this "obligation was incorporated into the Agreements between Plaintiffs and SOC as it was expressly for their benefit." DeFiore Compl., ECF No. 1-2 at ¶ 75; *see also* Darrough Compl., ECF No. 1-2 at ¶ 78. The complaints further allege that SOC required plaintiffs to work more than 12 hours a day, 72 hours a week. DeFiore Compl., ECF No. 1-2 at ¶ 76; *see also* Darrough Compl., ECF No. 1-2 at ¶ 79. And that as "a direct result of SOC's failure and refusal to perform its obligations under the terms and provisions of the Agreements, Plaintiffs have sustained damages in an amount according to proof at trial." DeFiore Compl., ECF No. 1-2 at ¶ 77; *see also* Darrough Compl., ECF No. 1-2 at ¶ 80.

Defendants argue that plaintiffs' breach of contract claim should be dismissed because the employment agreement does not contain express language limiting plaintiffs' work schedule to 12 hours per day, 72 hours per week. ECF No. 40 at 26. Defendants concede that the employment agreement defines duties and responsibilities as what is "customary," to allow for flexibility in the unpredictable warzone environment but argue that the employment agreement also requires employees to perform additional duties as the company directs. *Id*.

I agree that the complaints do not allege that plaintiffs' employment agreements contain express language limiting plaintiffs' work schedules. However, the complaints do allege the employment agreements state that employees would perform "customary" duties and responsibilities which specifically included a schedule of working no more than 12 hours in a day and 72 hours a week, and that SOC required plaintiffs to work in excess of that schedule,

resulting in damages. *See* DeFiore Compl., ECF No. 1-2 at ¶¶ 75–77; *see also* Darrough Compl., ECF No. 1-2 at ¶¶ 7, 78–80. Thus, plaintiffs have properly pled their breach of contract claim.

### C. Breach of the implied covenant of good faith and fair dealing (count six)

Nevada law implies a covenant of good faith and fair dealing in every contract. *Hilton Hotels Corp. v. Butch Lewis Prods., Inc.*, 808 P.2d 919, 922–23 (Nev. 1991). "Where the terms of a contract are literally complied with but one party to the contract deliberately contravenes the intention and the spirit of the contract, that party can incur liability for breach of the implied covenant of good faith and fair dealing." *Id.* "This cause of action is different from one for breach of contract because it requires literal compliance with the terms of the contract." *Stebbins v. Geico Ins. Agency*, 2019 WL 281281, at *2 (D. Nev. Jan. 22, 2019). "It is well established that a claim alleging breach of the implied covenants of good faith and fair dealing cannot be based on the same conduct establishing a separately pled breach of contract claim." *Id.* (quotation omitted) (finding a breach of the implied covenant of good faith and fair dealing claim may not be plead as an alternative theory of liability when based on the same allegations as the breach of contract claim).

Defendants argue that plaintiffs' breach of the implied covenant of good faith and fair dealing claim should be dismissed because it is duplicative of plaintiffs' breach of contract claim. ECF No. 40 at 29. Plaintiffs argue that the claim is not duplicative, and unlike their breach of contract claim, focuses on defendants' interference with plaintiffs' right to receive their salary and benefits of the contract. ECF No. 42 at 22.

In support of their breach of contract claim, plaintiffs allege that they "entered into written contracts with SOC"; "SOC was contractually obligated . . . to limit its guards to work no more than 12 hours in a day and 72 hours a week"; and SOC breached that obligation by requiring plaintiffs "to work more than 12 hours a day, and more than 72 hours a week." DeFiore Compl., ECF No. 1-2 at ¶¶ 73–76; *see also* Darrough Compl., ECF No. 1-2 at ¶¶ 76–79. Similarly, in support of their breach of the implied covenant of good faith and fair dealing claim, plaintiffs

allege that they "entered into written contracts with SOC"; "SOC was contractually obligated . . . to limit its guards to work no more than 12 hours in a day and 72 hours a week"; and SOC breached that obligation "by failing to abide by the requirement that Armed Guards not work more than 6 days a week, 12 hours per day." DeFiore Compl., ECF No. 1-2 at ¶¶ 80, 82–83; *see also* Darrough Compl., ECF No. 1-2 at ¶¶ 83, 85–86. As plaintiffs argue, their breach of the implied covenant of good faith and fair dealing claim also alleges that SOC "unfairly interfered with Plaintiffs' right to receive benefits of the contract"—however, it is made in the context of not working over the 6/12 schedule—not salary. DeFiore Compl., ECF No. 1-2 at ¶ 83; *see also* Darrough Compl., ECF No. 1-2 at ¶ 86. Because plaintiffs' implied covenant claim is identical to their contract claim, it cannot survive, so count six of the DeFiore and Darrough complaints is dismissed without prejudice.

### D. Quantum meruit (count seven)

In Nevada, quantum meruit recovery is not permitted when the parties have an express contract covering the matter. *See Leasepartners Corp. v. Robert L. Brooks Trust Dated Nov. 12, 1975*, 942 P.2d 182, 187 (Nev. 1997) ("An action based on a theory of unjust enrichment is not available when there is an express, written contract, because no agreement can be implied when there is an express agreement."); *Ewing v. Sargent*, 482 P.2d 819, 823 (Nev. 1971) ("Numerous authorities tend to support respondent's view that an action does not lie on an implied contract where there exists between the parties an express contract covering the same subject matter."); *see also Mobius Connections Grp., Inc. v. TechSkills, LLC*, , 2012 WL 194434, at *8 (D. Nev. Jan. 23, 2102) ("Nevada treats quantum meruit claims and unjust enrichment claims very similar. If there is **no express agreement** as to compensation, then one can recover the reasonable value of their services under a quantum meruit claim." (emphasis added)). However, despite a written contract, quantum meruit claims may proceed when the party seeking equitable recovery was specifically directed to perform work outside the contract. *See, e.g., Udevco, Inc. v. Wagner*, 678 P.2d 679, 682 (Nev.

1984) (discussing quantum meruit recovery when contractor performed extra work at the

direction the other party to the contract).

Defendants argue that plaintiffs' quantum meruit claim should be dismissed because it is

based on an express contract that governs the subject matter at issue, namely that plaintiffs'

quantum meruit claim is based on and arises from their employment contract with SOC, which,

they claim, limited their work schedules to 72 hours per week in violation of their employment

agreements. ECF No. 40 at 24. While I agree that plaintiffs' quantum meruit claim is based on

the contract, plaintiffs allege that they had to work beyond the contracted hours. *See* DeFiore

Compl., ECF No. 1-2 at ¶¶ 87–88; *see also* Darrough Compl., ECF No. 1-2 at ¶¶ 90–91. Indeed,

plaintiffs allege that SOC directed plaintiffs to work extra hours and received substantial benefit

from plaintiffs' extra work, but did not compensate plaintiffs for the extra work, which was

beyond the agreed to 6/12 schedule. DeFiore Compl., ECF No. 1-2 at ¶ 89; *see also* Darrough

Compl., ECF No. 1-2 at ¶ 92–93. Thus, plaintiffs' quantum meruit claim concerns payment for

hours work outside of the contract so it survives dismissal.

### E.  Alter ego

"Nevada has long recognized that although corporations are generally to be treated as

separate legal entities, the equitable remedy of 'piercing the corporate veil' may be available to

a plaintiff in circumstances where it appears that the corporation is acting as the alter ego of a

controlling individual." *LFC Mktg. Grp., Inc. v. Loomis*, 8 P.3d 841, 845 (Nev. 2000) (emphasis

added) (citing *Frank McCleary Cattle Co. v. Sewell*, 317 P.2d 957 (Nev. 1957)). To establish alter ego

liability in Nevada, plaintiffs must demonstrate: (1) the corporation is "influenced and governed

by the person asserted to be its alter ego"; (2) there is a "unity of interest and ownership that one

is inseparable from the other"; and (3) "adherence to the fiction of a separate entity would under

the circumstances, sanction fraud or promote injustice." *Aetna Cas. & Sur. Co. v. Rasa Mgmt. Co.*, 621

F. Supp. 892, 893 (D. Nev. 1985). "Each of these requirements must be present before the alter

ego doctrine can be applied." *N. Arlington Med. Bldg., Inc. v. Sanchez Constr. Co.*, 471 P.2d 240 (Nev. 1970).

Defendants argue that claims against SOC-SMG and Day & Zimmerman must be dismissed because plaintiffs did not satisfy the alter ego standard. ECF No. 40 at 31. In opposition, plaintiffs argue "the thrust" of their allegations is that SOC-SMG and Day & Zimmerman "participated in the wrongdoing." ECF No. 42 at 23–24. However, the allegations plaintiffs point to in the complaint are conclusory allegations that are broad scope against "defendants" generally. *See e.g. id.* (citing ECF No. 1-2 at 5–6 ("On information and belief, at all times herein material, each Defendant was completely dominated and controlled by its co-Defendants and each was the alter ego of the other.")) Such conclusory allegations unsupported by factual assertions will not withstand a motion to dismiss. *See Mann v. City of Tucson*, 782 F.2d 790, 793 (9th Cir. 1986) (per curiam). Plaintiffs failed to pair those conclusory allegations with factual assertions such as allegations of commingling of funds, undercapitalization, unauthorized diversion of funds, treatment of corporate assets as the entity's own, or failure to observe corporate formalities.[9] Thus, the conclusory allegations alone are not sufficient to allege alter ego in order to withstand a motion to dismiss. *See Mann*, 782 F.2d at 793 ("Although [courts] must, in general, accept the facts alleged in the complaint as true, wholly vague and conclusory allegations are not sufficient to withstand a motion to dismiss.")

Plaintiffs also argue that alter ego liability may be found in "judicially noticeable facts" which show that Day & Zimmerman sued SOC-SMG for their "bidding to the man" approach, and later ratified the conduct and continued to support the approach, which resulted in this litigation. *Id.* However, this is the first-time plaintiffs make such allegations and the "court

---

[9] "[T]he following factors, though not conclusive, may indicate the existence of an alter ego relationship: (1) commingling of funds; (2) undercapitalization; (3) unauthorized diversion of funds; (4) treatment of corporate assets as the individual's own; and (5) failure to observe corporate formalities." *LFC Mktg. Grp., Inc.*, 8 P.3d at 847 (internal quotation marks omitted). However, "[t]here is no litmus test for determining when the corporate fiction should be disregarded; the result depends on the circumstances of each case." *Id.* (quoting *Polaris Indus. Corp. v. Kaplan*, 747 P.2d 884, 887 (Nev. 1987)).

1  cannot consider new facts alleged in [an] opposition to a motion to dismiss." *Sabina v. James River*
2  *Ins. C*o., 2020 U.S. Dist. LEXIS 208156, at *4 (D. Nev. Nov. 6, 2020).

3      Thus, having failed to demonstrate that their complaints have pleaded any facts allowing
4  for alter ego liability, plaintiffs' claims against SOC-SMG and Day & Zimmermann are
5  dismissed without prejudice. *See Green Solutions Recycling, LLC v. Refuse, Inc*., 2017 U.S. Dist. LEXIS
6  44481, at *5–6 (D. Nev. Mar. 27, 2017) (dismissing all claims against corporate entities related to
7  party to relevant contract because "these Defendants have their own corporate identity, and the
8  Complaint does not assert any allegations to support proceeding on an alter ego theory").

9      **F.  Dismissal of the Doe defendants**

10      Defendants move to dismiss the 20 unnamed Doe defendants with prejudice. ECF No. 40
11  at 31. Plaintiffs do not oppose the dismissal. ECF No. 42 at 23. Accordingly, the 20 Doe
12  defendants are dismissed with prejudice.

13  **IV.    Conclusion**

14      The court **GRANTS IN PART** and **DENIES IN PART** defendants' consolidated motion
15  to dismiss **[ECF No. 40 (Darrough); ECF No. 48 (DeFiore)]**. The court **GRANTS** the motion,
16  dismissing counts one through four, six, and eight without prejudice; claims against SOC-SMG
17  and Day & Zimmerman without prejudice; and the 20 Doe defendants with prejudice. The court
18  **DENIES** the motion to dismiss count five and count seven.

19      Plaintiffs may file an amended complaint correcting the identified deficiencies by August
20  13, 2024.

21      Dated: July 29, 2024

22
23      _____
        Cristina D. Silva
        United States District Judge
24
25
26

13